**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a New York Corporation, Plaintiff,**

v.

**Michael John Paul GREEN a/k/a Brian Perkins, Defendant.**

**No. 95–2207–CIV.**

United States District Court, S.D. Florida.

March 29, 1996.

Benedict P. Kuehne, Miami, FL, for Plaintiff.

Jay Solowsky, Wallace, Engels, Pertnoy, Solowsky & Allen, Miami, FL, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Plaintiff Merrill Lynch Pierce Fenner & Smith Incorporated's ("Merrill Lynch") motion for preliminary injunction. The Court conducted an evidentiary hearing over the span of two days, March 28 and 29, 1996. For the reasons stated below, the Court finds that Merrill Lynch is entitled to a preliminary injunction.

## PROCEDURAL BACKGROUND

Merrill Lynch commenced this action on October 6, 1995, with the filing of a complaint for injunctive and declaratory relief. Merrill Lynch seeks to enjoin Defendant Michael Green, alias Brian Perkins, from arbitrating claims brought by Green against Merrill Lynch before the National Association of Securities Dealers ("NASD"). Together with the complaint, Merrill Lynch filed a motion for preliminary injunction barring Green/Perkins from proceeding with the NASD arbitration claim.

In his NASD arbitration action, Green/Perkins asserts that Merrill Lynch mishandled his investment account and col-

luded with the United States to effectuate the seizure of approximately $1.6 million in the account. The seizure took place at Merrill Lynch's Coral Gables, Florida office, where Green's account had been established under the name Brian Perkins. Green/Perkins seeks an arbitration award of $5 million in compensatory and punitive damages. The $1.6 million seized by the government were the subject of a civil forfeiture action as proceeds from money laundering and illegal drug trafficking. The case, which came before the Honorable Donald L. Graham, United States District Judge, Southern District of Florida, was settled, with the forfeiture of one-half of the seized funds to the government and the return of the other half to Green/Perkins.

Merrill argues that it is immune from the defendant's claim, pursuant to the safe harbor provision of the Bank Secrecy Act, found at 31 U.S.C. § 5318. In the alternative, Merrill Lynch argues that Green/Perkins has waived arbitration by his conduct prior to bringing the NASD claim. In response, Green/Perkins argues that the safe harbor provision does not shield Merrill Lynch from liability, and that his prior litigation conduct does not constitute a waiver of his right to arbitration.

## FACTUAL FINDINGS

The Court has carefully reviewed the record, and considered the testimony of the witnesses, as well as the documentary evidence presented at the hearing. In this regard the Court finds the testimony of Patricia Cotter quite credible, consistent and without contradiction. Further, the Court finds that Cotter, as Merrill Lynch's agent, acted appropriately and in compliance with the law at the time she received the telephone call apprising her of British Customs's suspicions regarding the bearer bonds transaction in the Perkins account.

The Court does not pretend to be fully aware of the relationship between Jeffrey Henwood, the Merrill Lynch broker who opened the Perkins account at the Coral Gables office, and Daniel Prager, the individual who appears to have established the link

between Henwood and Green/Perkins. Nor, for that matter, does the Court presume to understand the relationship between Prager and Green/Perkins. The Court, however, did not find Henwood to be a candid witness. Moreover, his testimony was not always consistent, particularly when compared with documentary evidence introduced by the defendant at the hearing. Specifically, the Court notes that, according to Henwood, Prager solicited Henwood as an investment advisor for Green/Perkins. Defendant's Exhibit N, a letter written to Merrill Lynch by Prager's attorney, states that Henwood initiated the contact with Prager. Hence, the Court assigns very little credibility to Henwood's testimony.

## DISCUSSION

■ To grant a preliminary injunction, the moving party must demonstrate that:

(1) there is a substantial likelihood that the moving party will prevail on the merits;

(2) the moving party will suffer irreparable injury if the injunction is not granted;

(3) the threatened injury to the moving party outweighs the threatened harm the proposed injunction may cause the opposing party; and

(4) the injunction, if issued, would not be adverse to the public interest.

*Johnson v. U.S. Department of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984).

■ With regard to the first prong of the preliminary injunction analysis, the Court finds that there is a substantial likelihood that Merrill Lynch will prevail on the merits. This determination is supported by two independent bases. One, it presently appears without contest, and the Court so finds, that Merrill Lynch is entitled to immunity for its initial disclosure regarding the Perkins account under the safe harbor provision of the Bank Secrecy Act, found at 31 U.S.C. § 5318. The statute prohibits financial institutions who voluntarily report a suspicious transaction to the government from notifying the persons involved in the transaction. Merrill Lynch complied with this provision by abstaining from notifying Green/Perkins of its own suspicions regarding the account and of the ongoing investigation by various American and British agencies. The statute further provides that a financial institution which reports a suspicious transaction

> shall not be liable to any person under any law or regulation of the United States or constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person of such disclosure.

31 U.S.C. § 5318(g)(3). Without presently determining its full breadth and scope, the Court reads the statute as conferring broad protection upon financial institutions. Moreover, but for Merrill Lynch's disclosure of information to federal authorities regarding Green's account, and concomitant failure to inform Green of such disclosure, Green would not be seeking relief against Merrill Lynch. Hence, the Court concludes that Merrill Lynch has shown a likelihood that it will prevail on the merits of its claim that section 5318's protective mantle immunizes Merrill Lynch from the defendant's arbitration claim.

■ The Court also finds that Merrill Lynch is likely to prevail on the merits with regard to its claim that Green/Perkins has waived arbitration by his conduct prior to bringing the present NASD claim. A review of the record reveals that in 1994 Green/Perkins brought a similar arbitration claim before NASD, but withdrew it. Subsequently, Green/Perkins brought a civil action against Merrill Lynch in the Northern District of California, based on the same facts. The action was transferred to the Southern District of Florida, where it came before the Honorable Stanley Marcus, United States District Judge, Southern District of Florida. After Merrill Lynch moved to dismiss, Green/Perkins voluntarily dismissed the action. The Court finds a substantial likelihood that Merrill Lynch will prevail on the merits on the issue of waiver, even under the stricter three-pronged test found in *Knight v. Xebec,* 750 F.Supp. 1116, 1118 (M.D.Fla.1990) which is cited by the defendant in his brief.

(1) Knowledge of existing right to compel arbitration: The commencement of a NASD

arbitration proceeding in 1994 establishes such knowledge on the part of Green/Perkins.

(3) Acts inconsistent with that existing right: The withdrawal of the 1994 arbitration claim and the subsequent commencement of a court action against Merrill Lynch in California are acts inconsistent with the defendant's asserted right to elect arbitration.

(3) Prejudice to the party opposing arbitration: The Court finds that Merrill Lynch has been prejudiced by Green's litigation maneuvers. The extent of such prejudice is not presently known to the Court. However, Merrill Lynch has had to defend itself in both the arbitration forum and in federal court, and been prevented from arguing the merits of its defense by the defendant's tactics.

Therefore, the Court concludes that Merrill Lynch has also shown a likelihood that it will prevail on the merits of its claim that Green has waived his right to arbitration.

The remaining factors for granting a preliminary injunction present no difficulty. The Court finds that Merrill Lynch will suffer irreparable injury if the injunction is not granted; that the threatened injury to Merrill Lynch outweighs the threatened harm the proposed injunction may cause Green/Perkins; and that the injunction would not be adverse to the public interest.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Merrill Lynch's motion for preliminary injunction is GRANTED. Accordingly, it is further

ORDERED AND ADJUDGED that Michael John Paul Green, a/k/a Brian Perkins, his agents, servants, employees, and attorneys and all persons in active concert and participation with him be and the same are hereby PRELIMINARILY ENJOINED from proceeding or attempting to proceed with arbitration of the claim before the National Association of Securities Dealers filed on or about July 17, 1995, case No. 95–03418, or any claim related to the matters set forth, therein. It is further

ORDERED AND ADJUDGED that this preliminary injunction shall become effective upon Plaintiff Merrill Lynch Pierce Fenner & Smith Incorporated's posting of security with the Clerk of Court in the sum of $20,-000, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. Should the plaintiff fail to post such security by 5:00 P.M., April 4, 1996, this preliminary injunction shall be dissolved by its own terms.